# In the United States Court of Federal Claims

No. 18-1255C
Filed: May 9, 2019
NOT FOR PUBLICATION

|  |  |  |
|---|---|---|
| ASHLEY DAWN BRACKEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | RCFC 12(b)(1); Subject-Matter |
| v. | ) | Jurisdiction; RCFC 12(b)(6); Failure To |
| | ) | State A Claim; Veterans Benefits; Illegal |
| THE UNITED STATES, | ) | Exaction. |
| | ) | |
| Defendant. | ) | |
| | ) | |

     *Michael Stanski*, Attorney of Record, Jacksonville, FL, for plaintiff.

     *Jana Moses*, Trial Attorney, *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

     Plaintiff, Ashley Dawn Bracken, brought this action seeking, among other things, to recover certain funds that she alleges have been wrongfully recouped by the United States Department of Veterans Affairs (the "VA") pursuant to the Post-9/11 Veterans Educational Assistance Act of 2008, 38 U.S.C. §§ 3301-3327 (the "Post-9/11 GI Bill").  *See generally* Compl.  The government has moved to dismiss this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims ("RCFC").  *See generally* Def. Mot.  For the reasons set forth below, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

Plaintiff, Ashley Dawn Bracken, is the ex-spouse of a former servicemember in the United States Army Reserves (the "Army Reserves") and she is the recipient of certain educational assistance benefits provided by the VA pursuant to the Post-9/11 GI Bill.  Compl. at ¶¶ 6-10; *see also* 38 U.S.C. §§ 3311, 3319.  In this action, plaintiff alleges that the VA wrongfully terminated and sought to recoup these benefits after her former spouse separated from the Army Reserves.  *See generally* Compl.  As relief, plaintiff seeks, among other things: (1) to "recover monies taken" by the VA; (2) the "forgiveness of monies owed" to the VA; (3) the payment of certain funds that plaintiff owes to the university that she attended; and (4) certain declaratory relief.  *Id.* at ¶¶ 28-42, Prayer for Relief.

#### 1.     The Post-9/11 GI Bill

As background, in 2008, Congress enacted the Post-9/11 Veterans Educational Assistance Act to provide educational assistance for certain veterans of the United States Armed Forces who served in the military on or after September 11, 2001.  *See generally* 38 U.S.C. §§ 3301-3327.  Pursuant to the Post-9/11 GI Bill, eligible servicemembers may receive educational assistance benefits if the servicemember satisfies certain conditions, including completing a period of active duty service, followed by either continued active duty service, or a qualifying discharge or release.  *See* 38 U.S.C. § 3311(a)-(c).

Specifically relevant to this case, an eligible servicemember may transfer a portion of the educational assistance benefits to a spouse or child.  38 U.S.C. § 3319(a), (c).  In this regard, the Post-9/11 GI Bill requires that a servicemember enter "an agreement to serve at least four more years as a member of the uniformed services" to transfer educational assistance benefits.  38 U.S.C. § 3319(b).  The bill also provides that the amount of any transferred educational assistance benefits that is used by a spouse or child shall be treated as an overpayment, should a servicemember fail to complete the agreed-to service.  38 U.S.C. § 3319(i)(2).  In addition, the Post-9/11 GI Bill provides that a servicemember and the servicemember's spouse or child are

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl.") and the government's motion to dismiss ("Def. Mot.").  Except where otherwise noted, all facts recited herein are undisputed.

considered jointly and severally liable to the government for any such overpayment.  38 U.S.C. § 3319(i)(1).

### 2.      The Payment And Recoupment Of Plaintiff's Benefits

Plaintiff alleges in the complaint that her ex-spouse, Christopher Bazzle, transferred some of his educational assistance benefits to plaintiff during their marriage.  Compl. at ¶ 9.  During the period 2015 to 2017, plaintiff attended classes at Keiser University and the VA provided her with educational assistance benefits, including funds for tuition, a housing allowance, and the purchase of books and supplies.  *Id.* at ¶¶ 11, 15.

Although Mr. Bazzle incurred a four-year service obligation under the Post-9/11 GI Bill when he transferred educational assistance benefits to plaintiff, he did not complete this service obligation due to his involuntary discharge from the Army Reserves in September 2016.  *Id.* at ¶¶ 12-13.  And so, the VA has sought to recoup the educational assistance benefits provided to plaintiff.  *Id.* at ¶¶ 18-19, 21-26.

### B.      Procedural Background

Plaintiff commenced this action on August 21, 2018.  *See generally id.*  On December 21, 2018, the government filed a motion to dismiss this matter pursuant to RCFC 12(b)(1) and (6).  *See generally* Def. Mot.

On February 4, 2019, plaintiff filed a response and opposition to the government's motion to dismiss.  *See generally* Pl. Resp.  On February 19, 2019, the government filed a reply in support of its motion to dismiss.  *See generally* Def. Reply.

This matter having been fully briefed, the Court resolves the pending motion to dismiss.

## III.   LEGAL STANDARDS

### A.      Jurisdiction And RCFC 12(b)(1)

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1).  But, plaintiff bears the burden of establishing subject-matter jurisdiction and she must do so by a

preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act is, however, "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (alterations original). And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003). "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).

Specifically relevant to this dispute, this Court has recognized that "[c]laims for veterans' benefits are not within the jurisdiction of the Court of Federal Claims." *See, e.g.*, *Berkowitz v. United States*, No. 07-328C, 2014 WL 4387851, at *4 (Fed. Cl. Sept. 4, 2014) (citing *Van Allen v. United States*, 66 Fed. Cl. 294, 296 (2005)). And so, "[d]isputes concerning veterans' benefits are handled internally by the VA" at the Board of Veterans Appeals, with appeal to the United States Court of Appeals for Veterans Claims. *Berkowitz*, 2014 WL 4387851, at *4; *see* 38 U.S.C. §§ 7105, 7252.

### B.    RCFC 12(b)(6)

When deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6), this Court similarly assumes that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor.  *See Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017) (quoting *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014)).  And so, to survive a motion to dismiss under RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint.  *Iqbal*, 556 U.S. at 678 (citation omitted).  On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based upon these facts, to find against the defendant.  *Id.* at 678-79 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### C.    Illegal Exaction

This Court possesses subject-matter jurisdiction to consider illegal exaction claims when the alleged exaction "is based upon an asserted statutory power."  *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (citation omitted).  The United States Court of Appeals for the Federal Circuit has recognized that an illegal exaction occurs when a "'plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'"  *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)).

To assert a valid illegal exaction claim, a plaintiff must show that:  (1) money was taken by the government and (2) the exaction violated a provision of the Constitution, a statute, or a regulation.  *Andres v. United States*, No. 03-2654, 2005 WL 6112616, at *2 (Fed. Cl. July 28, 2005).  In addition, a plaintiff must show that the statute or provision causing the exaction provides, either expressly or by necessary implication, that the remedy for its violation is the

return of money unlawfully exacted. *Norman*, 429 F.3d at 1095 (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000)).

In this regard, the Federal Circuit has held that money may be exacted either "directly or in effect." *Aerolineas Argentinas*, 77 F.3d at 1572-73. An "in effect" exaction generally applies in two situations. First, when the government requires a private party to pay money to a third, non-governmental party. *Andres*, 2005 WL 6112616, at *3; *see also Aerolineas Argentinas*, 77 F.3d at 1569-70; *Piszel v. United States*, 121 Fed. Cl. 793, 801-02, *aff'd*, 833 F.3d. 1366 (Fed. Cir. 2016). Second, when the government takes and sells private property, thereby receiving money and preventing the return of the property. *Andres*, 2005 WL 6112616, at *3; *see also Bowman v. United States*, 35 Fed. Cl. 397, 401 (1996). And so, an illegal exaction occurs when "the Government has the citizen's money in its pocket." *Clapp v. United States*, 127 Ct. Cl. 505, 512 (1954); *Piszel*, 121 Fed. Cl. at 802 (quoting *Andres*, 2005 WL 6112616, at *3).

## IV.  LEGAL ANALYSIS

The government has moved to dismiss this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted because: (1) plaintiff's challenge of the VA's decision to terminate her educational assistance benefits is beyond the purview of the Court's jurisdiction and (2) plaintiff cannot demonstrate that she paid money to the government, either directly or in effect, rendering her illegal exaction claim not actionable. Def. Mot. at 3-4; Def. Reply at 1; *see* RCFC 12(b)(1) and (6). In her response and opposition to the government's motion to dismiss, plaintiff counters that the Court should not dismiss this case because she has alleged a plausible illegal exaction claim in the complaint. Pl. Resp. at 6.

For the reasons discussed below, a careful reading of the complaint shows that the Court does not possess subject-matter jurisdiction to consider plaintiff's challenge of the termination and recoupment of her educational assistance benefits and that plaintiff fails to state a plausible illegal exaction claim in the complaint. And so, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the complaint. RCFC 12(b)(1) and (6).

### A.  The Court May Not Consider Plaintiff's Veterans' Benefits Claims

As an initial matter, the Court may not consider plaintiff's challenge of the VA's decision to terminate and recoup her educational assistance benefits, because this claim should be

resolved internally within the VA.  In the complaint, plaintiff alleges that she seeks to "recover monies for wrongful recoupment of Post-9/11 GI Bill education benefits" and that 38 U.S.C. § 3311 is the money-mandating statute that establishes jurisdiction under the Tucker Act and "provides entitlement to recover pay and allowances for wrongfully terminated education benefits."  Compl. at page 1, ¶¶ 29, 33, 37, 41.  Plaintiff's jurisdictional argument is flawed for two reasons.

First, it is well-established that this Court does not possess subject-matter jurisdiction to consider plaintiff's claim related to the termination and recoupment of her educational assistance benefits, because her challenge of the termination and recoupment of these veterans' benefits falls within the sole purview of the VA.  *See Berkowitz v. United States*, No. 07-328C, 2014 WL 4387851, at *4 (Fed. Cl. Sept. 4, 2014) (citing *Van Allen v. United States*, 66 Fed. Cl. 294, 296 (2005)); *see also* 38 U.S.C. §§ 7105, 7252.  This Court has held that "[d]isputes concerning veterans' benefits are handled internally by the VA" at the Board of Veterans Appeals, with appeal to the United States Court of Appeals for Veterans Claims.  *Berkowitz*, 2014 WL 4387851, at *4; *see* 38 U.S.C. §§ 7105, 7252.  And so, to the extent that plaintiff seeks to challenge the VA's decision to terminate and recoup her educational assistance benefits, plaintiff must pursue that claim before the VA.[2]  *See Berkowitz*, 2014 WL 4387851, at *4; *see also* RCFC 12(b)(1).

The government also persuasively argues that plaintiff cannot rely upon 38 U.S.C. § 3311 to provide the money-mandating source of law to establish jurisdiction to pursue her claim under the Tucker Act.  Def. Mot. at 3-4; *see also Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)).  In the complaint, plaintiff alleges that 38 U.S.C. § 3311 "provides entitlement to recover pay and allowances for wrongfully terminated education benefits."  Compl. at ¶¶ 29, 33, 37, 41.  But, to establish jurisdiction under the Tucker Act, plaintiff must show that this statute "can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the

---

[2] Plaintiff argues in her response and opposition to the government's motion to dismiss that she "does not challenge [the] VA's decision to 'terminate [her] education benefits.'"  Pl. Resp. at 5.  But, the complaint makes clear that plaintiff seeks to recover monies from the government "for wrongfully terminated education benefits."  Compl. at ¶¶ 29, 33, 37, 41.

duties [that it] impose[s]." *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).

Plaintiffs make no such showing in this case.  Indeed, a reading of Section 3311 makes clear that this statute cannot be fairly interpreted as mandating compensation for a breach of any duties that the statute may impose, because Section 3311 simply sets forth the criteria for entitlement to receive educational assistance benefits from the VA.[3]  *See generally* 38 U.S.C. § 3311.  Given this, plaintiff's reliance upon Section 3311 to establish jurisdiction in this case is misplaced and the Court must dismiss plaintiff's challenge of the VA's decisions to terminate and recoup her educational assistance benefits.  RCFC 12(b)(1).

### B.    Plaintiff Fails To Allege A Plausible Illegal Exaction Claim

The Court must also dismiss plaintiff's illegal exaction claim because plaintiff fails to state a plausible claim in the complaint.  In her response and opposition to the government's motion to dismiss, plaintiff argues that the Court should not dismiss this case because she is challenging the VA's decision to recoup her educational assistance benefits and this claim "falls well into the category of 'illegal exaction' cases heard by this Court."[4]  Pl. Resp. at 5.  A careful reading of the complaint shows, however, that plaintiff does not state a plausible illegal exaction claim in the complaint.

The Federal Circuit has long recognized that an illegal exaction occurs when a "'plaintiff has paid money over to the Government, [either] directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'"  *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)).  And so, to assert a valid illegal exaction claim in this case, plaintiff must

---

[3] Section 3311 provides, in relevant part, that:

> (a) Entitlement. — Subject to subsections (d) and (e), each individual described in subsection (b) is entitled to educational assistance under this chapter. . . .

38 U.S.C. § 3311(a).

[4] Plaintiff argues that the VA engaged in an illegal exaction because the agency "demanded money and obtained money from [plaintiff]."  Pl. Resp. at 6.

show that:  (1) money was taken by the VA and (2) the exaction violated a provision of the Constitution, a statute, or a regulation.  *Andres v. United States*, No. 03-2654, 2005 WL 6112616, at *2 (Fed. Cl. July 28, 2005).  In addition, plaintiff must also show that the statute or provision causing the exaction provides, either expressly or by necessary implication, that the remedy for its violation is the return of money unlawfully exacted.  *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000)).  Again, plaintiff makes no such showing in this case.

A careful reading of the complaint makes clear that the factual allegations in the complaint establish that the VA has sought to recoup plaintiff's educational assistance benefits in accordance with the requirements of the Post-9/11 GI Bill.  The Post-9/11 GI Bill conditions the receipt and ability to transfer educational assistance benefits upon a servicemember's commitment to, among other things, enter "an agreement to serve at least four more years as a member of the uniformed services."  38 U.S.C. § 3319(b)-(c); Def. Mot. at 1; Compl. at ¶ 10. This bill also requires that the amount of any transferred educational assistance benefits be treated as an overpayment, should the servicemember fail to complete the agreed-to service.  38 U.S.C. § 3319(i)(2).  In addition, the Post-9/11 GI Bill makes clear that a servicemember—and a spouse or child who receives educational assistance benefits—are jointly and severally liable to the government for the overpayment of these benefits.  38 U.S.C. § 3319(i)(1); *see also* 38 U.S.C. § 3685(a) ("[T]he amount of such overpayment shall constitute a liability of [the] veteran or eligible person to the United States."); 31 C.F.R. § 902.4(a) ("[A]gencies should pursue collection activity against all debtors, as appropriate.").

Plaintiff acknowledges in the complaint that her ex-spouse "incurred a service obligation of four (4) years" under the Post-9/11 GI Bill and that he "did not . . . satisfy his service obligation for spousal transfer of Post-9/11 GI Bill education benefits."  Compl. at ¶¶ 10, 13. Under such circumstances, the Post-9/11 GI Bill clearly provides that the VA may treat plaintiff and her ex-spouse as jointly and severally liable to the government for the return of these funds. 38 U.S.C. § 3319(i)(1).  Given this, the allegations in the complaint make clear that plaintiff has not—and cannot—show that the alleged exaction in this case violates the Post-9/11 GI Bill or any other law.  *Andres*, 2005 WL 6112616, at *2.  And so, the complaint fails to plausibly state an illegal exaction claim.

The Court is also not persuaded by plaintiff's argument that dismissal of this case is unwarranted because the VA failed to counsel her ex-spouse about his four-year service obligation under the Post-9/11 GI Bill.  Pl. Resp. at 6-7; *see also* Compl. at ¶ 20.  Even if true, this factual allegation is insufficient to show that the remedy for the alleged violation of the Post-9/11 GI Bill would be the return of money unlawfully exacted from plaintiff.[5]  *Norman*, 429 F.3d at 1095 (quoting *Cyprus Amax Coal Co.*, 205 F.3d at 1373).

Indeed, as the government correctly observes in its reply brief, "[S]ection 3319(i) [of the Post-9/11 GI Bill] authorizes the United States to seek recoupment of overpayment of [educational assistance benefits], including overpayments due to the military member's failure to complete his service obligation, from either the military member or their dependent."  Def. Reply at 3; *see* 38 U.S.C. § 3319(i).  Given this, plaintiff cannot show that the VA's recoupment of her benefits violated the Post-9/11 GI Bill to pursue an illegal exaction claim in this case.  *Andres*, 2005 WL 6112616, at *2; *see* RCFC 12(b)(6).

## V.   CONCLUSION

In sum, the most generous reading of the complaint makes clear that the Court does not possess subject-matter jurisdiction to consider plaintiff's veterans' benefits claim and that plaintiff has not plausibly alleged an illegal exaction claim in the complaint.  And so, for the foregoing reasons, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

---

[5] Plaintiff's reliance upon the United States District Court for the Eastern District of Virginia's decision in *Thompson v. United States*, 119 F. Supp. 3d 462 (E.D. Va. 2015), is also misplaced.  Pl. Resp. at 6-7.  In *Thompson*, the district court held that a servicemember could make an untimely transfer of educational assistance benefits, because the VA failed to counsel him about the timing requirement for transferring such benefits.  *Thompson*, 119 F. Supp. 3d at 470-71.  But, *Thompson* does not address the VA's authority to recoup educational assistance benefits, or illegal exaction claims.  *See generally id.*  Plaintiff's argument that the Court should exercise its equitable powers to "correct an obvious injustice" is also misguided, because this Court does not possess the power to grant such equitable relief under the Tucker Act.  Pl. Resp. at 7; *see also* Compl. at ¶ 18; *see generally* 28 U.S.C. § 1491(a)(2).

Each party to bear their own costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge